UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SANDERS,

    Plaintiff,

v.

KETTERING UNIVERSITY,

    Defendant.

_____/

Hon. Victoria A. Roberts

Case No. 07-11905

## OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE

**I.   INTRODUCTION**

This matter is before the Court on Defendant Kettering University's Motion for Summary Judgment. Defendant's Motion was referred to Magistrate Steven D. Pepe, pursuant to 28 U.S.C. §636(b)(1)(B), for a Report and Recommendation ("R&R"). On March 3, 2009, the Magistrate Judge issued an R&R recommending that the Court grant Defendant's Motion. Plaintiff Michael Sanders objects to the Magistrate's Recommendation on several grounds. For the reasons stated, the Court finds that Plaintiff's objections lack merit; the Court **ADOPTS** the Magistrate's R&R.

**II.   BACKGROUND**

The underlying facts and procedural history are fully set forth in the R&R. Therefore, only those facts and history necessary to address Plaintiff's objections are repeated here.

This lawsuit arises out of Defendant's termination of Plaintiff from his position as

assistant professor at Kettering University in July 2006. Plaintiff's original seven-count complaint asserted various state and federal civil rights violations and state law breach of contract. Plaintiff later stipulated to dismissal of Counts I - IV of his amended Complaint. The three counts which remain allege: Count V - national origin discrimination under Title VII of the Civil Rights Act, 42 U.S.C. 2000e-3; Count VI - retaliation under the Michigan Elliott Larsen Civil Rights Act, MCL 37.2701; and Count VII - breach of contract.

### III.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Redding*, 241 F.3d at 532.

If the movant establishes by use of the material specified in Rule 56(c) that there

is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968); see also *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV.   ARGUMENTS AND ANALYSIS

### A.  Direct Evidence

#### 1.  National Origin Discrimination

Plaintiff objects to the Magistrate's finding that there is no direct evidence of national origin discrimination.  A claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), Pub. L. 88-352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201 *et seq.*, can be established either by direct evidence of discrimination or circumstantial evidence creating an inference of discrimination. *Sniecinski v. Blue Cross & Blue Shield*, 469 Mich. 124, 132, 666 N.W.2d 186 (2003).

Direct evidence is evidence that "if believed requires the conclusion that unlawful discrimination was at least a motivating factor." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005).  It does not require the fact finder to draw any inferences to reach that conclusion. See *Nguyen v. City of Cleveland*, 229 F.3d 559,

563 (6th Cir. 2000). Evidence of discrimination is not considered direct evidence unless a racial [or national origin] motivation is explicitly expressed. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

Plaintiff offers seven instances of remarks as direct evidence of discriminatory animus based on national origin:

> (1) In the summer of 2005, Plaintiff walked with two of his colleagues in the parking lot. They discussed various issues and the merit of foreign versus domestic auto products. Ken Morrison allegedly said, "foreigners of your type" usually side with Japanese manufacturers.
>
> (2) Dr. Poock spoke to Plaintiff in Persian on one occasion. During this exchange, Dr. Poock said "Hello, how are you," to which Plaintiff responded that he did not speak Persian. Dr. Poock never attempted the Persian language again.
>
> (3) In a faculty meeting in 2004, Ken Morrison said "f-ck that SH-T" in a discussion about lean manufacturing and the Toyota method of manufacturing.
>
> (4) Late in 2004, Ken Morrison said, "your type always sides with foreign-type ideas."
>
> (5) Drs. Poock and Clark, in response to complaints from graduate students regarding Plaintiff's inflexibility, counseled him to be more cooperative in providing extensions to students. They told him that he "needed to play on the team" and that they expected him to "be a team player."
>
> (6) Professor Chuck White told Plaintiff that his application materials must "beat Mark Palmers' materials."

> (7) In March 2005, while riding in, and discussing the merits of a Toyota Highlander, Ken Morrison accused Plaintiff of being a "Jap lover."

The Magistrate found that of the seven remarks listed by Plaintiff as direct evidence, only two concerned national origin: (1) Ken Morrison's comment that "foreigners of your type" usually side with Japanese manufacturers and (2) Dr. Poock's attempt to speak with Plaintiff in the Persian language.  The Magistrate says as a matter of law, neither is direct evidence of discrimination in the tenure making process because Morrison was only one of 10 people on the committee that denied Plaintiff tenure, and five different entities comprised of numerous individuals decided to deny Plaintiff tenure. The Magistrate Judge recommends that the Court find no direct evidence of discrimination.

Plaintiff counters that Morrison made his unsolicited comments about Plaintiff's foreign-born status just several months before initiating the administrative complaint that led to Plaintiff's termination.  Plaintiff presents evidence that he contacted Dr. Poock via email on August 17, 2005, to discuss Morrison's "mentorship approach." *See* Doc. 29, Exh. 18.  Although Dr. Poock denies it, Plaintiff says he met with Dr. Poock to complain about Morrison's biased comments.  Plaintiff presents evidence that on August 19, 2005, Morrison sent him a scathing email stating, "[y]our view on the situation really is unworthy of response, but I will risk it . . ." *See* Doc. 29, Exh. 19.  It is unclear what initiated this email.  Eight days later Morrison filed the written faculty complaint against Plaintiff with Dr. Poock, signed by seven other faculty members. (The complaint was apparently post-dated by two months; it is unclear whether this was accidental or intentional).  Plaintiff says Morrison initiated the complaint only after he complained

about Morrison's biased comments. Thus, Plaintiff contends that although Morrison did not ultimately make the termination decision, his initiation of and participation in the process is direct evidence of discrimination.

Plaintiff cites *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001), *Rosen v. Thornburgh*, 928 F.2d 528, 534 (2nd Cir. 1991), and *Hunt v. City of Markham, Ill.*, 219 F.3d 649 (7th Cir. 2000) for the proposition that stray remarks can be direct evidence of discrimination when those who provide input into a specific employment decision express them around the time of the adverse employment decision. The Court finds Plaintiff's reliance on these cases misplaced.

In *Gorence*, three employees of Eagle Food Centers challenged the district court's review and dismissal of their claims under the *McDonnell Douglas* framework, claiming that they should have been analyzed under the direct method of proof. One of the employees, Gorence, alleged she was denied a promotion to assistant warehouse manager because of her sex and age. She claimed that a supervisor's statement that "he didn't want to talk to any middle-aged menopausal women" supported a finding of intentional discrimination. The Seventh Circuit disagreed. The court reasoned that even if the supervisor did not want to talk to middle-aged women, he still interviewed Gorence, but didn't hire her because he believed she did not meet the qualifications for the position. *Gorence* at 764.

In *Rosen*, a DEA special agent challenged the district court's finding that he did not establish a *prima facie* case in his Title VII discrimination action. He claimed he was improperly dismissed because anti-Jewish animus affected the DEA's evaluation of a driving requirement, as applied to him. Analyzing his claims under the indirect method

6

of proof, the appeals court concluded that plaintiff's evidence of numerous biased comments and incidents by his counselors, instructors and classmates were adequate to establish a *prima facie* case of employment discrimination and survive defendant's motion for summary judgment. *Rosen* at 533-534.

Finally, in *Hunt*, four white police officers challenged the dismissal of their "reverse" discrimination action. They alleged they were denied certain raises and promotions on account of race and age, and that blatant ageist and racist comments made by the mayor and other black officials at city council meetings were evidence of discrimination. Although the mayor didn't vote at meetings of the city council, he recommended actions to the council, including the denial of raises sought by two plaintiffs. The appeals court ruled that when the decision makers themselves, or those who provide input into the decision, express discriminatory feelings around the time of or in reference to the adverse action, it can be evidence of discrimination.

Because Plaintiff abandoned his claim of discrimination in the tenure making process, the Magistrate's analysis of the evidence in relation to tenure was in error. But this does not change the result. None of the comments advanced by Plaintiff mentions his Iranian descent, and only three conceivably could relate to his foreign-born status, unlike the blatantly discriminatory comments in *Hunt* and *Rosen*. And, there is no evidence that Morrison, the main focus of Plaintiff's claim, was an actual decision maker or provided input into the decision to terminate. Thus, even if Morrison's comments could be construed as biased, they do not require the conclusion that unlawful discrimination was a motivating factor in the decision to suspend or terminate Plaintiff. They are insufficient, as a matter of law, to create a material issue of fact.

### 2. Retaliation

Plaintiff challenges the Magistrate's finding that there was no direct evidence of retaliation. The Magistrate said that Plaintiff's evidence was lacking because Dr. Poock, the main focus of the retaliation claim, was: (1) instrumental in Plaintiff's hiring, (2) one of the few faculty members who supported Plaintiff's candidacy for tenancy, and (3) played no role in the investigation regarding Plaintiff's alleged misconduct and had no input into the decision to terminate.

The ELCRA requires Plaintiff to demonstrate that (1) he opposed violations of the Act or participated in an activity protected by the Act and (2) his opposition or participation was a "significant factor" in the adverse employment action. *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). The causal connection between the adverse employment action and the protected activity . . . may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint and by showing that he was treated differently from other employees. *Id.*

Plaintiff presents no direct evidence that he complained of discrimination and was terminated as a result. His August 17, 2005 email to Dr. Poock only references Morrison's "mentorship approach"; there is no mention of discriminatory treatment. Morrison's August 19, 2005 email to Plaintiff makes no reference to allegations of discrimination. Additionally, Plaintiff presents no evidence of treatment of other Iranian employees. The only evidence in this regard was presented by Defendant, and it established that Defendant promoted nine other professors of Iranian descent, including Plaintiff's brother who is a full professor. *See* Doc. 25, Exh. 2. The Magistrate correctly found there was no direct evidence of retaliation.

### B. Circumstantial Evidence

#### 1. National Origin Discrimination

Plaintiff objects to the Magistrate's finding of no circumstantial evidence of discrimination. The Magistrate said there was no circumstantial evidence to support Plaintiff's national origin discrimination claim since he failed to show that: (1) he performed his job at a level which met Defendant's legitimate expectations, (2) there was any connection between his national origin and the denial of tenure and subsequent termination, and (3) a requisite causal link existed between his complaints to Dr. Poock and the adverse employment actions.

Plaintiff's circumstantial evidence is evaluated through a tripartite burden-allocation scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) and summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). Plaintiff must establish discriminatory animus was a motivating factor in the employer's action. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928-29 (6th Cir. 1999).

The Court is persuaded that Plaintiff made out a *prima facie* case on his discrimination claim. Plaintiff presented evidence that he received very good or

excellent performance appraisals each year, as well as annual merit increases; this demonstrates that he was qualified for his position. Defendant says Plaintiff failed to show he was qualified for his position, as evidenced by Dr. Morrison and others calling for an investigation into Plaintiff's behavior and the three member investigatory team's unanimous finding of misconduct. However, a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000).

Defendant presented evidence that the annual performance reviews were performed by a single individual, Dr. Poock, and the tenure review was conducted by professors both in Plaintiff's department and throughout the university, and involved a thorough analysis of Plaintiff's scholarship, teaching, and academic service since his 2000 hire date. Defendant says it was during this review that faculty detected the previously unknown falsifications and conduct that led to the formal complaint. Plaintiff was suspended and ultimately terminated as a result of the ensuing investigation. Defendant met its burden to articulate a legitimate, non-discriminatory reason.

To establish that a reason for an adverse action was pretextual and thus defeat summary judgment, Plaintiff "must show one of the following: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the action, or (3) that the proffered reason [was] insufficient to motivate the action." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002) (internal quotation marks and brackets omitted).

In an attempt to show pretext, Plaintiff says Defendant failed to follow its own

10

written procedures which require investigation and resolution of complaints by an impartial committee within 20 days. Instead, he says the committee undertook a 6-month fishing expedition to "prove" the allegations, rather than look at them impartially. Plaintiff adds that Defendant suspended him during the investigation, also contrary to its procedures. And, he says the investigatory committee failed to present or comment on his evidence disputing the allegations against him, and added new allegations to which he was not allowed to respond. Plaintiff says these procedural irregularities, coupled with Morrison's discriminatory comments, give rise to an unlawful inference of discrimination. The Court disagrees.

Plaintiff presented evidence in the form of a letter from Dr. Poock, that Plaintiff was suspended because the university would be closed for 2 weeks in late December 2005 through early January 2006, and would likely not be able to thoroughly investigate and resolve the matter before the start of the 2006 winter term. *See* Doc. 29, Exh. 31. This course of action appears to be in conflict with the procedure outlined in the faculty handbook: "[i]mmediate suspension may result only when the President determines that the continued presence of a faculty member on the Kettering University campus would create a substantial interference with the orderly functioning of the University or would present a reasonable concern for the safety of a person/property." See Doc. 29, Exh. 36. Likewise, the Handbook says that within 20 days after receipt of the complaint, the department head should provide a summary of the investigative findings about the complaint to the affected faculty member, the complainant(s), the faculty moderator, the moderator's designee and the human resources department. *Id.* Again, it does not appear that this formal procedure was exactly followed.

11

However, notwithstanding procedural irregularities, Plaintiff cannot establish that Defendant's proffered reason was pretextual. As detailed below, the Handbook provides that certain forms of unacceptable conduct may constitute a basis for discipline, up to and including dismissal for cause. The investigatory committee unanimously found that Plaintiff engaged in professional misconduct. Plaintiff presents no credible evidence that the committee findings were false or misleading. Thus, Plaintiff failed to create a genuine issue of material fact as to pretext.

### 2. Retaliation

The Court need not address whether Plaintiff established a *prima facie* case of retaliation, because he failed to create a genuine issue of material fact as to pretext. *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). The evidence supports Defendant's claim that it terminated Plaintiff for performance-related reasons. On this record, no reasonable jury could conclude otherwise.

### C. Same Actor Inference

Plaintiff next argues that the R&R's reliance on the same actor inference to support a grant of summary judgment is misplaced. The "same actor" inference allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee. *Burhmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995). The Magistrate Judge recommends that the Court find the same actor inference precludes Plaintiff's discrimination and retaliation claims, because the same individuals who filed the faculty complaint against Plaintiff were part of the committee that interviewed him, resulting in an offer of employment. The Magistrate says a strong presumption against discrimination arises because of the relatively short time frame

12

between when Plaintiff was hired, when Dr. Poock recommended him for tenure, and the subsequent adverse employment actions.

Plaintiff cites *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003) for the proposition that use of the same actor inference to summarily dismiss a claim is inappropriate where there is other evidence of discrimination. In *Wexler*, the 55 year old plaintiff challenged the grant of summary judgment for the employer in his age discrimination action. Plaintiff presented evidence that he was demoted from store manager to sales representative during a private meeting at which two corporate officers made several adverse references to his age. The company president again mentioned plaintiff's age when he announced the demotion to the other store employees; during the same speech, the president emphasized the youth of plaintiff's successor. The Sixth Circuit held that if the fact finder draws the same actor inference, summary judgment for the defendant is unwarranted if the employee has otherwise raised a genuine issue of material fact. There, the plaintiff's direct evidence of discriminatory bias on the part of the decision makers created a question of fact, even if the same actor inference were applied.

Here, Plaintiff failed to raise a question of fact. He argues that his annual contract renewals were not made or approved by Ken Morrison, the key actor who instigated the discriminatory and retaliatory conduct, so the same actor inference is not applicable. However, even if Morrison harbored discriminatory animus towards Plaintiff, the record does not establish Morrison was involved in the decision-making process beyond the complaint level. The Wicks committee investigated the allegations in the complaint, and Robert Simpson, Interim Vice President for Academic Affairs and

13

Provost, made the ultimate decision to terminate. Because Plaintiff presents no other evidence of discrimination, use of the same actor inference was appropriate.

### D. State Law Breach of Contract

Lastly, Plaintiff objects to the conclusion that there was just cause for his termination. The Magistrate found that Defendant had just cause to terminate Plaintiff because he did not possess the requisite teaching capabilities or concern for students, and did not contribute meaningfully to scholarly activities or the university environment.

In a breach of employment contract action, the plaintiff makes a *prima facie* case by (1) proving the contract, (2) producing testimony that he had performed it up to the time of his discharge, and (3) providing proof of damages; the defendant then has the affirmative burden of proving that plaintiff had breached the contract, and that the discharge was legal. *Rasch v. City of East Jordan*, 141 Mich. App. 336, 340-41 (1985) (citing *Saari v George C Dates & Associates, Inc*, 311 Mich 624, 628; 19 NW2d 121 (1945)).

The Magistrate found that Plaintiff failed to establish a *prima facie* case because he did not meet the second prong of the *Rasch* test – that he performed under the terms of his just cause employment contract up to the date of discharge. Plaintiff disputes the Magistrate's finding. He says his annual job evaluations show that he excelled in his job and his direct supervisor's determination in this regard is strong evidence that he was qualified for the position. At a minimum, Plaintiff says the performance evaluations contradict the assertions that Plaintiff lacked teaching ability and did not contribute meaningfully to the university community and scholarly activities.

Plaintiff admits that Defendant's policies allow for termination for just cause, but

14

argues that under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 621 (1980), it is up to the trier of fact to determine whether there was just cause. Interestingly, Plaintiff also acknowledges an exception to the *Toussaint* rule, articulated in *Thomas v. John Deere Corp.*, 205 Mich. App. 91 (1994), where an employer has a provision reserving the sole authority to decide whether termination is justified and for just cause, and providing the manner by which it will make such a determination. While Plaintiff doesn't directly address whether the exception is applicable, Defendant says that Section 7.4.4 of the Faculty Handbook clearly establishes that Defendant reserved the right to define just cause. Moreover, Defendant says the Handbook identifies "dishonesty in professional activities," the conduct which led to Plaintiff's termination, as a form of unacceptable conduct that may be the basis for termination.

      The Court agrees that Plaintiff failed to make out a *prima facie* case. While Plaintiff's annual evaluations demonstrate that, on the surface, he performed to his direct supervisor's expectations, they did not give a complete picture of his performance. The tenure review process, the Morrison complaint, and the resulting investigation revealed no less than five incidences of deliberate misrepresentations or inappropriate conduct which occurred throughout Plaintiff's employment. *See* Doc. 41, Exh. B. They included misrepresenting (1) in a promotion application that a corporate software donation included a cash component; (2) on his resume that he was the primary author of an article, when in fact he was the secondary author; (3) the value of a software license gift on an annual faculty assessment; and (4) that he presented the keynote speech at an industry conference. It also included his failing to account for and return all funds donated for a conference, despite repeated requests from the corporate

donor, after the conference was cancelled.

The Faculty Handbook outlines "Unacceptable Conduct," which is considered conduct that violates the university's ethical principles and which may constitute a basis for discipline.  Types of unacceptable conduct include: (1) intentionally misrepresenting others' written work as one's own or failing to credit appropriately the professional contributions of others in research projects; (2) acts of fraud against the university, such as falsification of records; and (3) unauthorized use of the university's name, facilities and/or property for personal, commercial, political or religious purposes. *See* Doc. 25, Exh. 7.  These facts establish just cause for the termination even if the just cause standard was not contractually required.

## V.    CONCLUSION

The Court overrules Plaintiff's objections and **ADOPTS** the Magistrate's Report and Recommendation.

**IT IS ORDERED**.

s/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated:  September 17, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 17, 2009.
>
> s/Linda Vertriest  
> Deputy Clerk